IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

                 Plaintiff,

    v.

CLIFFORD WOOD,

                 Defendant.

Criminal No. 16-00035

ELECTRONICALLY FILED

## MEMORANDUM ORDER DENYING DEFENDANT CLIFFORD WOOD'S *PRO SE* "MOTION REQUESTING RELIEF PURSUANT TO 18 U.S.C. 3582(c)(1)(A)(i), 'COMPASSIONATE RELEASE'" (Doc. 157)

Pending before the Court is Defendant Clifford Wood's *pro se* "Motion Requesting Relief Pursuant to 18 U.S.C. 3582(c)(1)(A)(i), 'Compassionate Release'" ("Section 3582 (c)(1)(A)(i) Motion"). (Doc. 157). By his Section 3582(c)(1)(A)(i) Motion, Defendant requests that his sentence be reduced to time served and his term of supervised release be reduced to 3 years. (*Id.* at 19).

## I.     BACKGROUND

On April 7, 2017, Defendant was sentenced to 180 months' imprisonment, to be followed by a 5-year term of supervised release, for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) ("Section 922(g)(1)") and 18 U.S.C. § 924(e) ("Section 924(e)"). (Doc. 100, Doc. 102).

Defendant's 180-month sentence was based on the parties' agreement in the plea agreement that "[i]f it is determined that Clifford Wood has 3 previous convictions for violent felonies or serious drug offenses or both under 18 U.S.C. § 924(e) (*i.e.*, Defendant is an Armed

Career Criminal under the Armed Career Criminal Act, 18 U.S.C. § 924(e)), then pursuant to Rule 11(c)(l)(C), the parties stipulate and agree that the appropriate sentence in this case is a term of imprisonment of fifteen (15) years (180 months)." Ultimately, the Court determined that Defendant had 3 previous convictions for serious drug offenses under 18 U.S.C. § 924(e). (Doc. 100, Doc. 106 at 5).

Defendant's 180-month sentence is less than the advisory sentencing guideline range of 188 to 235 months' imprisonment that otherwise was applicable to Defendant for his conviction based on his pleading guilty to the offense charged.[1]  (Doc. 91).

Defendant currently is confined at USP Coleman I, and is projected to be released from Bureau of Prisons ("BOP") custody on April 14, 2029.[2]

On October 13, 2022, Defendant filed, *pro se*, his pending Section 3582(c)(1)(A)(i) Motion.  (Doc. 157).  Attached to Defendant's 3582(c)(1)(A)(i) Motion is: (1) an October 26, 2021 Individualized Needs Plan – Program Review that lists the institutional programs Defendant has completed while in BOP custody; and (2) Defendant's October 4, 2022 Declaration.  (Doc. 157-1, Doc. 157-2).

In support of his Section 3582(c)(1)(A)(i) Motion, Defendant asserts several bases which he argues, individually and collectively, establish an "extraordinary and compelling" reason such that Defendant's sentence should be reduced to time served pursuant to Section 3582(c)(1)(A)(i).

On October 14, 2022, the Government filed a response in opposition to Defendant's Section 3582(c)(1)(A)(i) Motion.  (Doc. 159).  On October 15, 2022, the Government filed an

---

[1] Had Defendant gone to trial, and been convicted, he would have had an offense level of 34 and a criminal history of VI, and the applicable advisory sentencing guidelines range would have been 262-327 months. U.S.S.G., Chapter 5.

[2] *See* https://www.bop.gov/inmateloc/ (last visited December 6, 2022).  By this Court's calculation, to date Defendant has served approximately 6 years and 9 months of his 180-month sentence, which is approximately 45% of his full sentence and 52% of his currently projected sentence.

Errata to its response in opposition to Defendant's Section 3582(c)(1)(A)(i) Motion because it had failed to redact part of an exhibit, and to attach a certificate of service to its October 14, 2022 filing.  (Doc. 160).

In opposition to Defendant's Section 3583(c)(1)(A)(i) Motion, the Government contends that Defendant's Section 3582(c)(1)(A)(i) Motion must be denied because: "1) he has failed to prove that he has exhausted any of his claims; 2) he has failed to prove that any of his reasons are 'extraordinary and compelling'; and 3) he has failed to prove that the § 3553 factors necessitate his immediate release."  (*Id.* at 1).

Accordingly, Defendant's Section 3582(c)(1)(A)(i) Motion (Doc. 157) has been fully briefed, and is ripe for adjudication.

## II.     STANDARD OF REVIEW

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization."  *McMillan v. U.S.*, 257 Fed. App'x 477, 479 (3d Cir. 2007*); see also Dillon v. U.S.*, 560 U.S. 817, 819 (2010).  One such specific authorization is the First Step Act's amendment of 18 U.S.C. § 3582.  As amended, that provision allows a court to modify a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).  Additionally, the court must consider: (1) whether the defendant has exhausted the appropriate administrative remedies; (2) the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable; and (3) whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

As further explained by the United States Court of Appeals for the Third Circuit in

*United States v. Badini*, 839 F. App'x 678 (3d Cir. Mar. 11, 2021):

> The compassionate-release provision states that a district court "may reduce the term of imprisonment" and "impose a term of probation or supervised release" if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Before granting compassionate release, a district court must consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." *Id*. § 3582(c)(1)(A). Those factors include, among other things, "the nature and circumstances of the offense and the history and characteristics of the defendant," *id*. § 3553(a)(1), and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; and "to protect the public from further crimes of the defendant," *id*. § 3553(a)(2)(A)–(C).

*Badini,* 839 Fed. App'x. at 678-79.

In determining what should be considered an "extraordinary and compelling reason" for

sentence reduction under Section 3582, the United States Sentencing Commission has defined

the contours of the test, in relevant part, as follows:

> 1.  Extraordinary and Compelling Reasons.--Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.
>
> . . .
>
> (ii) The defendant is
>      (I) suffering from a serious physical or medical condition,
>      (II) suffering from a serious functional or cognitive impairment, or
>      (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1.  Notably, given the lack of an updated applicable Policy Statement

defining "extraordinary and compelling," the Court of Appeals for the Third Circuit has held

that: "the existing policy statement is not applicable—and not binding—for courts considering prisoner-initiated motions" for compassionate release, but that "[t]he policy statement's descriptions of extraordinary and compelling circumstances can 'guide discretion without being conclusive'." *U.S. v. Andrews*, 12 F.4th 255, 259, 260 (3d Cir. 2021) (quoting *U.S. v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (citations and footnote omitted). Additionally, Congress has made clear that "rehabilitation . . . alone shall not be considered an extraordinary and compelling reason" for a reduction in a defendant's sentence. 28 U.S.C. § 994(t).

The defendant bears the burden of proof, by a preponderance of the evidence, with respect to a motion for compassionate release brought pursuant to Section 3582(c)(1)(A). *U.S. v. Grasha*, 489 F.Supp.3d 403, 406 (W.D. Pa. 2020) (citations omitted).

Finally, there is an administrative exhaustion requirement that must be met before a defendant may file a Section 3582(c)(1)(A) motion with the Court. As explained by the Court of Appeals for the Third Circuit in *United States. v. Harris,* 973 F.3d 170 (3d Cir. 2020), Section 3582(c)(1)(A) "states that the defendant may file the motion [for compassionate release pursuant to Section 3582(c)(1)(A)] thirty days after the warden receives his request." *Harris,* 973 F.3d at 171.

### III.   DISCUSSION

#### A. Defendant Has Not Sufficiently Exhausted His Administrative Remedies As to Any of the Bases Asserted in this Section 3882(c)(1)(A)(i) Motion

Defendant did not attach to his Section 3582(c)(1)(A)(i) Motion any evidence that he exhausted his administrative remedies with respect to his Section 3582(c)(1)(A)(i) Motion as required by Section 3582(c)(1)(A). The Government, however, has supplied the Court with a Reduction in Sentence Application submitted by Defendant on May 20, 2022, in which Defendant checked the basis for his request as "Other-Extraordinary and Compelling

Circumstance," and further explained, in response to the statement, "[b]riefly describe your medical condition or extraordinary and compelling circumstance," "New Rule of Law." (Doc. 160-1 at 1).

Defendant asserts that the following reasons, individually or collectively, establish an "extraordinary and compelling" reason such that this Court should reduce Defendant's sentence to time served pursuant to Section 3582(c)(1)(A)(i).

First, Defendant contends that the existence of COVID-19, now or in the future, at USP Coleman I, where Defendant is incarcerated, places Defendant at high risk for severe illness given the conditions at USP Coleman I and Defendant's status as a middle age, African American, former smoker with possible hypertension and a family history of hypertension and diabetes.

Second, Defendant asserts that he has been rehabilitated since incarcerated.

Third, Defendant argues that he was improperly sentenced as an Armed Career Criminal under the Armed Career Criminal Act, 18 U.S.C. § 924(e).

Fourth, Defendant argues that his 2016 guilty plea was unknowing and involuntary in violation of his due process rights in light of the United States Supreme Court's 2019 decision in *Rehaif v. United States*, 139 S.Ct. 2191 (2019) ("*Rehaif*").[3]  Specifically, Defendant asserts that: (1) the Court did not explain to Defendant before he pleaded guilty*, that*, as later clarified by the Supreme Court in *Rehaif*, *supra*., one of the elements the Government had to prove to convict Defendant of violating Section 922(g)(1) is that Defendant knew, at the time he possessed the

---

[3] More specifically, in *Rehaif*, the Supreme Court "conclude[d] that in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2200. At the time Defendant pled guilty to violating Section 922(g)(1) in 2016, courts did not interpret Section 922(g)(1) to require proof that the defendant knew his prohibited status. *See United States v. Dodd*, 225 F.3d 340, 344 (3d Cir. 2000).

firearm, he had previously been convicted of a crime punishable by imprisonment of more than

one year; and (2) had the Court informed Defendant of all the elements necessary to prove a

Section 922(g)(1) violation, including the *Rehaif* "knowing" element, Defendant would not have

pleaded guilty, and would have gone to trial on the Section 922(g)(1) charge.  Forthwith, the

Court will refer to this argument by Defendant as his "*Rehaif* argument."

Even viewing liberally Defendant's May 20, 2022 Reduction in Sentence Application, in

which Defendant described his "medical condition or extraordinary and compelling

circumstance" as "New Rule of Law," the BOP would not have known that Defendant was

requesting a reduction in sentence, pursuant to Section 3582(c)(1)(A)(i), on the basis of any of

the four above-detailed reasons set forth in Defendant's Section 3582(c)(1)(A)(i) Motion.

Accordingly, the Court finds that Defendant's Section 3582(c)(1)(A)(i) Motion must be denied

for failure to exhaust the requisite administrative remedies before filing said Motion.

**B. Defendant's Section 3582(c)(1)(A)(i) Motion Fails on its Merits**

Additionally, having reviewed the merits of Defendant's Section 3582(c)(1)(A)(i)

Motion, the Court finds that Defendant's Section 3582(c)(1)(A)(i) Motion will be denied on its

merits at this time because, for the reasons below: (1) Defendant has not established an

"extraordinary and compelling" reason for Defendant's 180-month term of imprisonment to be

reduced to time served; and (2) upon consideration of the factors set forth in 18 U.S.C. § 3553(a)

("Section 3553(a)"), such a reduction of Defendant's 180-month sentence would not be

appropriate at this time.

      1.  *Defendant Has Not Established an "Extraordinary and Compelling" Reason to Reduce Defendant's Term of Incarceration to Time Served*

Having considered, both alone and in combination, Defendant's asserted reasons for why

he has established an "extraordinary and compelling" reason for his sentence to be reduced to

time served pursuant to Section 3582(c)(1)(A)(i), for the reasons set forth below, the Court finds

that Defendant has not, at this time, established an "extraordinary and compelling" reason for his

sentence to be reduced to time served pursuant to Section 3582(c)(1)(A)(i).

> a. *COVID-19, the conditions at USP Coleman I, and Defendant's age,*
> *ethnicity, and underlying medical conditions*

The Court turns first to Defendant's claim that his sentence should be reduced to time

served because the existence of the coronavirus, now or in the future, at USP Coleman I, where

Defendant is incarcerated, places Defendant at high risk of severe illness given: (1) the

conditions at USP Coleman I; and (2) Defendant's status as a middle age, African American,

former smoker with possible hypertension and a family history of hypertension and diabetes.

Based upon Defendant's submissions, the Court finds that Defendant simply has not made the

showing necessary to convince this Court that an extraordinary and compelling reason

warranting reduction of Defendant's compassionate release is presented because of Defendant's

age (approximately 35 years old), ethnicity (African American), underlying medical conditions,

and the conditions are USP Coleman I.

Specifically, while the Centers for Disease Control and Prevention ("CDC") have

concluded that a number of medical conditions make a person "more likely to get very sick from

COVID-19,"[4] including an individual being a former smoker and possibly having hypertension,

Defendant has submitted no medical records that support that he is a former smoker who suffers

---

[4] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions html (updated as of November 22, 2022).  Currently, these conditions include: cancer, chronic kidney disease, chronic liver disease, chronic lung diseases (including moderate to severe asthma), cystic fibrosis, dementia or other neurological conditions, diabetes (type 1 or type 2), certain types of disabilities, heart conditions (including, "possibly high blood pressure (hypertension)"), HIV infection, immunocompromised condition or weakened immune system, mental health conditions (including depression), being overweight and obesity, physical inactivity, pregnancy, sickle cell disease or thalassemia, smoking (current or former cigarette smoker), solid organ or blood stem cell transplant, stroke or cerebrovascular disease, substance use disorders, and tuberculosis.  (*Id.*).

from hypertension or that he has a family history of diabetes and hypertension.  Moreover, not included in the CDC's list of medical conditions that make a person "more likely to get very sick from COVID-19," is a family history of diabetes or hypertension.

Further, the Court finds that Defendant has not established that as a result of the COVID-19 virus, his ethnicity (African American) qualifies as an "extraordinary and compelling" reason for a sentence reduction pursuant to Section 3582(c)(1)(A)(i).  As succinctly explained by the district court in *United States v. Alexander*, Crim. No. 19-32, 2020 WL 2507778 (D.N.J. May 15, 2020):

> it is not clear that being African-American increases Defendant's risk of complications from the COVID-19, in the same manner as one's underlying medical conditions. Indeed, although African Americans are overrepresented in data regarding COVID-19 hospitalizations and deaths in America as a whole, this overrepresentation may result from other systemic economic and social issues affecting the African American community, including access to health care, higher prevalence of underlying conditions, and lack of access to health insurance. *See* Center for Disease Control and Prevention, Coronavirus Disease 2019 Racial & Ethnic Minority Groups, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-minorities.html (explaining that economic and social conditions often isolate racial and ethnic minorities form (sic.) the recourses (sic.) needed to prepare for and respond to COVID-19 outbreaks). As such, it is unclear whether Defendant's race places him at a greater risk of contracting COVID-19, while he is incarcerated and receiving medical treatment at the MCCI.

*Alexander*, 2020 WL 2507778, at *4.  *See also U.S. v. Gatson*, Crim. No. 13-705, 2021 WL 3879083, at *2 (D.N.J. Aug. 31, 2021), *aff'd*,  2021 WL 5632079 (3d Cir. Dec. 1, 2021) (same).

Additionally, absent having certain underlying medical issues (which Defendant has not shown he has), being approximately 35 years old is not an age that has been found to be at special risk if an individual contracts the coronavirus.  *See* https://www.cdc.gov/aging/covid19/covid19-older-adults.html (last visited December 6, 2022) (explaining, "**[t]he risk increases for people** in their 50s and increases in 60s, 70s, and 80s. People 85 and older are the most likely to get very sick.") (emphasis in original).

Moreover, Defendant is vaccinated against COVID-19,[5] which mitigates the likelihood that Defendant will get very sick or die if he contracts COVID-19.  "COVID-19 vaccines available in the United States are effective at protecting people from getting seriously ill, being hospitalized, and dying."  *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/stay-up-to-date.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fvaccines%2Ffully-vaccinated-guidance.html (updated Nov. 1, 2022) (last visited December 6, 2022).

Thus, while the "COVID-19 situation is always-changing and . . . it is unclear how emerging COVID-19 variants will alter vaccine efficacy over time," as of now, the CDC indicates that the Defendant has significant protection against serious illness or death due to his vaccination.  *U.S. v. Hannigan*, Crim. No. 19-373, 2021 WL 1599707, at *5 (E.D. Pa. April 22, 2021).  *See also U.S. v. Woodley,* Crim. No. 13-113, 2022 WL 2467730, at *6 (W.D. Pa. July 6, 2022) (explaining, "[m]oreover, the availability of vaccines that are highly effective at preventing infection and, when breakthrough infections occur, at reducing the severity of symptoms, must be recognized"); *U.S. v. Lindsay*, Crim. No. 13-1, 2022 WL 1720458, at *4 (W.D. Pa. May 27, 2022) (concluding, "Lindsay has received COVID-19 vaccination, and, as a result, his risk of being infected/re-infected with COVID-19 and/or suffering sever (sic.) illness if he is infected is significantly diminished. Moreover, the risks posed by Lindsay's underlying medical conditions no longer present an extraordinary and compelling reason to justify compassionate release given the efficacy of the COVID-19 vaccination Lindsay has received."); *U.S. v. Singh*, 525 F.Supp.3d 543, 547 (M.D. Pa. 2021) (concluding, "[Defendant's] recent

---

[5] Defendant received his second dose of the Pfizer-BioNTech COVID-19 vaccine on September 8, 2021. (Doc. 160-3).

vaccination mitigates his risk from COVID-19 to such an extent that COVID-19, in combination with [Defendant's] underlying conditions, no longer presents an extraordinary and compelling reason to grant compassionate release.").

      Finally, contrary to Defendant's contention that the conditions at USP Coleman I establish an "extraordinary and compelling" reason to reduce his 180-month sentence,[6] the evidence supports that at this time, the BOP has successfully curbed the spread of COVID-19 at USP Coleman I, such that the current likelihood of Defendant contracting COVID-19 at USP Coleman I is low/speculative.  Specifically, as of the date of this Memorandum Order: (1) FFC Coleman, a prison complex of which USP Coleman I is a part, is operating at a BOP COVID-19 Operational Level 1;[7] (2) out of the approximately 1346 inmates at USP Coleman I, there currently are no inmates or staff testing positive for the coronavirus at the facility; and (3) 5464 inmates and 757 staff at FFC Coleman have been fully vaccinated.[8]  *See U.S. v. Somerville*, 463 F.Supp.3d 585, 597-98 (W.D. Pa. 2020) (explaining, "a prisoner seeking release due to COVID-19 must at least show . . . an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held").

      Thus, for all of the above reasons, the Court finds that the COVID-19 virus is being controlled effectively at USP Coleman I and Defendant's age, ethnicity, medical conditions, and

---

[6] Defendant asserts that at USP Coleman I, he cannot practice social distancing, he is exposed to surfaces that are not rapidly disinfected after each use, and "other recommended measures" are not being implemented.  (Doc. 157 at 11).

[7] *See* https://www.bop.gov/coronavirus/ (last visited December 6, 2022).  A BOP facility operates at COVID-19 Operational Level 1 when: "Medical isolation rate < 2% AND Facility vaccination rate ≥ to 65% AND Community transmission rate is < 100 per 100,000 over the last 7 days."  *See* https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited December 6, 2022).

[8] *See* https://www.bop.gov/coronavirus/ (last visited December 6, 2022). This count does not include additional booster shots given to inmates; inmates have been offered booster shots in accordance with CDC guidelines.  *(Id.).*

the conditions at USP Coleman I pose no threat to Defendant's health greater than what he would face if he were not incarcerated. *See Woodley*, 2022 WL 2467730, at \*6 (determining, "[g]iven Defendant's age, the availability of vaccines, the high rate of vaccination at Lewisburg USP, the fact that Lewisburg USP currently has no positive staff or inmates, Defendant's access to medical care and the protocols in place at Lewisburg USP, and the fact that the current vaccines are expected to protect against severe illness, hospitalization, and deaths with the newer Omicron variant, the Court finds that Defendant has not set forth an extraordinary or compelling reason justifying compassionate release.").

      *b. Defendant's sentence as an Armed Career Criminal under the Armed Career Criminal Act, 18 U.S.C. § 924(e)*

With respect to Defendant's argument that he has established an "extraordinary and compelling" reason to reduce his sentence pursuant to Section 3582(c)(1)(A)(i) because he was improperly sentenced as an Armed Career Criminal under the Armed Career Criminal Act, 18 U.S.C. § 924(e), Defendant's argument is essentially a challenge to the validity of his sentence, and such a challenge is properly raised on direct review or through a 28 U.S.C. § 2255 ("Section 2255") habeas petition, and is not cognizable under Section 3582(c)(1)(A)(i). *See U.S. v. Holmes*, No. 22-1772, 2022 WL 3657180, at \*2 (3d Cir. Aug. 25, 2022) (explaining, "such [sentencing error] challenges are typically brought under 28 U.S.C. § 2255") (citing *Calderon v. Thompson*, 523 U.S. 538, 553 (1998) (holding that a prisoner may not circumvent AEDPA's restrictions by labeling a second or successive application for habeas relief something else); *Okereke v. U.S.*, 307 F.3d 117, 120 (3d Cir. 2002) (stating that motions to vacate "pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences"); *U.S. v. Fine*, 982 F.3d 1117, 1118–19 (8th Cir. 2020) (rejecting the defendant's argument that he was innocent of his sentence, because judicial decisions filed after

his sentencing showed that the district court improperly classified him as a career offender under the sentencing guidelines, as inappropriately brought under Section 3582)); *U.S. v. Skeeters*, Crim. No. 05-530, 2022 WL 16579312, at *3 (E.D. Pa. Nov. 1, 2022) (concluding "that a motion for compassionate release is not the correct basis for defendant's argument that the Hobbs Act robbery conviction is not a valid predicate crime of violence, and holding "[c]laims of sentencing error must be raised in a motion pursuant to 28 U.S.C. § 2255") (citations omitted); *U.S. v. Morris*, Crim. No. 13-125, 2022 WL 1213960, at *3 (W.D. Pa. Apr. 25, 2022) (concluding, "supposed errors in the calculation of a defendant's sentence 'can be raised only in a § 2255 motion,' not a motion brought pursuant to § 3582(c)(1)(A)") (citations omitted); *U.S. v. Gordon*, Crim. No. 15-00496, 2022 WL 1062976, at *2 (E.D. Pa. Apr. 8, 2022), *aff'd*, No. 22-1853, 2022 WL 14365245 (3d Cir. Oct. 25, 2022) (explaining, "'[c]onvictions and sentences can be challenged on direct appeal or in the habeas forum, but not in a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A)'") (*quoting U.S. v. Albanese*, 2021 WL 2400762, at *3 (E.D. Pa. June 11, 2021)); *U.S. v. Webb*, 2022 WL 206174, at *3 (E.D. Pa. Jan. 24, 2022) (holding, "a motion for compassionate release is not the proper mechanism by which to assert" challenges to the legality of a defendant's conviction and sentence and collecting cases holding same); *U.S. v. Martin*, Crim. No. 98-178, 2021 WL 4169429, at *8 (E.D. Pa. Sept. 14, 2021), *aff'd*, No. 21-2853, 2022 WL 621689 (3d Cir. Mar. 3, 2022) (same).  To permit otherwise would be to allow Defendant "to do an end-run around the path to challenging sentences that Congress established."  *U.S. v. King*, Crim. No. 13-01, 2021 WL 4439302, at *3 (N.D. Ill. Sept. 28, 2021) (*app. dismissed*, No. 21-2794, 2021 WL 7909283 (7th Cir. Dec. 28, 2021)).

Accordingly, because the Court finds that Defendant's argument that he was improperly sentenced as an Armed Career Criminal under the Armed Career Criminal Act, 18 U.S.C.

§ 924(e), is not cognizable under Section 3582(c)(1)(A)(i), Defendant has not established an

"extraordinary and compelling" reason for his sentence to be reduced pursuant to Section

3582(c)(1)(A)(i) based on said argument.

### c.   *Defendant's Rehaif argument*

In support of Defendant's *Rehaif* argument, Defendant submits a Declaration that states

in pertinent part:  "That Declarant would not have plead (sic.) guilty to possession of firearm

convicted felon had he been properly informed, in light of all the facts Declarant would have

proceded (sic.) to trial."  (Doc. 157-2, ¶ 5).

Defendant's *Rehaif* argument is a challenge to the validity of his conviction, and thus

must be raised on direct review or through a Section 2255 habeas petition, and is not cognizable

under Section 3582(c)(1)(A)(i).  *See U.S. v. Cercone*, Crim. No. 19-04, 2022 WL 17176903, at

\*2 (W.D. Pa. Nov. 23, 2022) (denying defendant's Section 3582(c)(1)(A) motion to extent it was

premised on the argument that a change in law, the Supreme Court's clarification of the scienter

requirement regarding felony status for 18 U.S.C. § 922(g) offense in *Rehaif*,  means that he may

have been improperly convicted, because "arguments based on *Rehaif* are more appropriately

addressed in Section 2255 habeas proceedings, not alteration of sentencing"); *U.S. v. Brown*,

Crim. No. 12-224, 2020 WL 4345077, at \*5 (W.D. Pa. July 29, 2020) (denying the defendant's

Section 3582(c)(1)(A) motion to extent it was premised on the argument that defendant's

conviction is infirm in light of *Rehaif*, explaining "that *Rehaif* did not alter the available penalties

for violating § 922(g)(1), and "[t]hus, Mr. Brown's argument that his conviction is infirm in light

of *Rehaif* does not support the next step, namely that an infirm conviction would authorize a

lesser sentence. As a result, relying on *Rehaif* could only form a basis to vacate Mr. Brown's

conviction itself, not alter his term of imprisonment. And as the United States correctly notes, 28

U.S.C. § 2255 controls a motion to vacate a conviction."); *U.S. v. Cherry*, Crim. No. 19-122-1, 2022 WL 1557777, at *3 (E.D. Pa. May 17, 2022) (same); U.S. v. Lopez, CR 17-87, 2022 WL 123177, at *4 (D. N.J. Jan. 12, 2022) (same).  Again, to permit otherwise would be to allow Defendant "to do an end-run around the path to challenging sentences [and convictions] that Congress established."  *King*, 2021 WL 4439302, at *3.

Moreover, Defendant has already litigated, unsuccessfully, in a Section 2255 habeas petition, his *Rehaif* argument.

In denying Defendant's original and amended Section 2255 Motions, this Court determined, in relevant part:

> [B]ased upon the state court judge's clear and unambiguous statements and explanations during the June 20, 2007 change of plea and sentencing hearing colloquy, there can be no reasonable doubt that on February 18, 2016, when Defendant possessed the firearm at issue in the Indictment, Defendant knew that he had been previously convicted of multiple crimes punishable by imprisonment for a term exceeding one year. Therefore, there is not a reasonable probability that, but for the claimed *Rehaif* errors, Defendant would not have pleaded guilty and would have insisted on going to trial, i.e., there was no actual prejudice.

(Doc. 150 at 23-24).

Thereafter, the Court of Appeals for the Third Circuit denied Defendant's certificate of appealability request relative to this Court's denial of Defendant's original and amended Section 2255 Motions, stating, in pertinent part:

> Wood has not shown that jurists of reason would debate the District Court's resolution of his claim under Rehaif v. United States, 139 S.Ct. 2191, 2200 (2019). See Miller v. Cockrell, 537 U.S. 322, 336 (2003).  We need not decide whether Rehaif applies retroactively to cases on collateral review, because even assuming arguendo that it does, Wood has not made a substantial showing of the denial of a constitutional right.  See 28 U.S.C. § 2253(c)(2).  . . .  Wood has not arguably shown that he would not have pleaded guilty had he known that the Government was required to prove he knew he was a felon. See Hill v. Lockhart, 474 U.S. 52, 59 (1985). Wood seeks to challenge the indictment or the validity of his guilty plea, but those claims are defaulted because they were not raised on direct appeal, and Wood has not overcome the default. See Bousley v. United States, 523 U.S. 614,

622 (1998). He has not arguably shown cause and prejudice or actual innocence. Wood had been sentenced to more than a year in prison on four felony offenses before he was charged with possession of a firearm by a felon. See 18 U.S.C. §922(g)(1) (prohibiting possession of a firearm by one convicted "a crime punishable by imprisonment for a term exceeding one year").

*U.S. v. Wood*, No. 21-1836 (3d Cir. (July 22, 2021) (Doc. 7-1 at 1-2).

Having reviewed Defendant's submissions, including Defendant's self-serving Declaration, in light of the well-established record in this case, this Court rejects, for the reason set forth by this Court, *supra*., in denying Defendant's original and amended Section 2255 Motions, and for the reasons set forth by the Court of Appeals for the Third Circuit in denying a certificate of appealability with respect to Defendant's original and amended Section 2255 Motions, *supra.*, Defendant's contention that his *Rehaif* argument warrants a sentence reduction to time served pursuant to Section 3582(c)(1)(A)(i). *See U.S. v. Henderson*, 858 F. App'x 466, 469 (3d Cir. 2021) (holding, "[a] previously rejected claim of sentencing error could never qualify as an 'extraordinary and compelling reason' for compassionate release"). Simply stated, Defendant has not established, and cannot establish, that had the Court informed Defendant of the *Rehaif* "knowing" element, Defendant would not have pleaded guilty to, and would have gone to trial on, the Section 922(g)(1) charge.

Accordingly, for all of the above-stated reasons, the Court finds that Defendant has not established an "extraordinary and compelling" reason for his sentence to be reduced pursuant to Section 3582(c)(1)(A)(i) based on his *Rehaif* argument.

### d.  *Defendant's rehabilitation since incarcerated*

Fourth, while Defendant's rehabilitation efforts, as set forth in his Compassionate Relief Motion, are commendable, given Defendant's numerous incident reports since being incarcerated

Defendant's rehabilitation efforts do not, alone or in combination, establish an "extraordinary and compelling" reason to reduce Defendant's 180-month sentence.[9]  *See also* 28 U.S.C. § 994(t) (stating, "rehabilitation . . . alone shall not be considered an extraordinary and compelling reason" for a reduction in a defendant's sentence pursuant to Section 3582(c)(1)(A)).

### 2. A Sentence Reduction in This Case Would Not be Consistent With the Applicable Factors Set Forth in 18 U.S.C. § 3553(a)

The Court also finds that, contrary to Defendant's contention, a sentence reduction in this case would not be consistent with the applicable factors set forth in 18 U.S.C. § 3553(a) ("Section 3553(a)").  Specifically, the Court finds that in light of: (1) the serious nature and circumstances of the firearm offense for which Defendant currently is incarcerated;[10] (2) Defendant's significant criminal history;[11] and (3) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence to

---

[9] Records submitted by the Government indicate that since incarcerated, Defendant has been subject to disciplinary action on several occasions, including for possessing drugs/alcohol, possessing paper laced with drugs (amphetamine), and possessing a dangerous weapon.  (Doc. 160-2).

[10] On February 18, 2016, an officer was on patrol in Homestead, Pennsylvania.  At approximately 1:30 a.m., the officer observed Defendant, who was known to the officer from prior encounters, **fire** five shots from a silver handgun.  Defendant fired the shots **approximately 15 feet** from the officer's **occupied** vehicle.  At that time, the officer exited his patrol vehicle in full uniform, drew his service weapon, **identified** himself as a police officer, and **instructed** Defendant to drop the weapon.  Defendant **did not follow the police officer's instructions**, and instead **ran** approximately ten feet before dropping a silver Ruger Security Six .357 revolver bearing serial #15671561, and **continuing to flee**.  The officer ultimately apprehended Defendant near the driveway of Community Life Center, a senior citizens facility.  (Doc. 91, ¶¶ 13-15), Doc. 100 at 1-2).

[11] Defendant was sentenced in this criminal matter as an "Armed Career Criminal" pursuant to Section 924(e) because he has **three** prior state court convictions for **serious drug offenses** committed on separatee occasions (once for possession with intent to deliver cocaine, and twice for possession with intent to deliver heroin).  (Doc. 91, ¶¶ 29, 34-36).  **Additionally**, Defendant has been convicted of drug possession (multiple times), driving without a license (multiple times), fleeing or attempting to elude police, firearms not to be carried without a license, resisting arrest, criminal mischief, public drunkenness, and defiant trespass.  (*Id.* at ¶¶ 34-39).  Indeed, Defendant's criminal history category is a VI based upon Defendant's extensive criminal history even absent his designation as an "Armed Career Criminal" under Section 924(e).  (*Id.* at ¶ 40).

criminal conduct, and protect the public from further crimes of the defendant,[12] the Section

3353(a) factors counsel against reducing Defendant's sentence at this time.  *See U.S.*

*v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) (affirming inmate's denial of compassionate

release because "the § 3553(a) factors weigh[ed]" against release).

## IV.    CONCLUSION

For all of the above stated reasons, Defendant Clifford Wood's *pro se* "Motion

Requesting Relief Pursuant to 18 U.S.C. 3582(c)(1)(A)(i), 'Compassionate Release',"

(Doc. 157), is DENIED.

SO ORDERED this 6th day of December, 2022.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:    All ECF Registered Counsel of Record

Clifford Wood
#37871-068
Federal Correctional Complex – USP #1
Coleman, FL 33521-1033

---

[12] As explained *supra*.: (1) Defendant's 180-month sentence is less than the advisory guideline range of 188 to 235 months imprisonment that was applicable to Defendant for this conviction as a result of Defendant pleading guilty; and (2) by the Court's calculation, to date Defendant has served only approximately 45% of his full sentence and approximately 52% of his projected sentence.